State of Missouri, ex rel. Circuit Attorney, Appellant, *v.* Charter Oak Life Insurance Company, Respondent.

### November 16, 1880.

The penalties for issuing insurance policies in foreign corporations after they have been excluded from the State, are visited upon the resident agent, and not upon the corporation.

Appeal from the St. Louis Circuit Court, Boyle, J. *Affirmed.*

B. Kinney, for the appellant.

Lee & Chandler, for the respondent.

Lewis, P. J., delivered the opinion of the court.

The petition sets forth that the defendant is a corporation created under the laws of the State of Connecticut for the purpose of doing a life-insurance business in each and every State of the United States ; that defendant has had at all the times stated, and now has, an authorized and duly accredited agent or attorney in the city of St. Louis to receive service of process in any and all suits or actions against defendant, in accordance with the statute in such case made and provided ; that on or about August 3, 1877, William S. Relfe, superintendent of the insurance department of the State of Missouri, revoked the certificate of authority or license to do business of life insurance within said State of Missouri which had theretofore been held by defendant, and no such certificate or license has since that time been issued to or held by defendant ; that on August 5, 1877, in the city of St. Louis, defendant solicited and did business of life insurance, and

issued a policy on the life of John Stupp, contrary to the statute, etc., whereby defendant became indebted and liable to pay to the State of Missouri the penal sum of $500, one-half thereof to the State, and the other half to the use of the relator, for which judgment is prayed accordingly.

The petition then proceeds, in one hundred and twenty counts, to charge the issuing by defendant of as many separate policies, in like violation of law, and asks for a like judgment as to each one.

The defendant filed a general demurrer, which was sustained.

Wagner's Statutes (p. 749, sect. 30) declares that it shall not be lawful for any person to act within this State, as agent or otherwise, in receiving or procuring applications, etc., "for any life assurance company or association incorporated by or organized under the laws of the United States, or any other State of the United States, or foreign government," unless certain conditions exist, which are specified in other provisions of the act.  By sect. 36, p. 751, it is enacted that no such company as is mentioned in the section above quoted " shall transact in this State any business, etc.,   *   *   *   unless it shall first procure from said superintendent a certificate stating that the foregoing requirements have been complied with, and authorizing it to do business," etc.  By sect. 41, p. 753, it is provided that, upon ascertaining certain results in an examination to be made by the superintendent, " he shall revoke the certificate of authority granted to such company;  *  *  * and the agent or agents of such company are, after such revocation and notice, required to discontinue the issuing of any new policies or the collection of any premiums."   Sect. 52, p. 758, is as follows: "Every violation of this act shall subject the party violating to a penalty of $500 for each violation, which shall be sued for and recovered in the name of the State of Missouri, by the attorney-general of the State or the circuit attorney of the circuit in which the

company, or agent or agents, so violating shall be situated ; and one-half of such penalty, when recovered, shall be paid into the treasury of the State, and the other half to the informer of such violation ; and in case of non-payment of such penalty, the party so offending shall be liable to imprisonment for a period not exceeding six months, in the discretion of any court having cognizance thereof.'' Other provisions in the body of the act prescribe regulations for the government of life insurance companies organized under the laws of this State.

The question to be determined is, whom, in the case of foreign insurance companies, does the fifty-second section, above quoted, intend to punish for violation of the act? Is it the non-resident corporation or the resident agent? If we suppose the former, our attention is at once arrested by the phenomenal attempt to inflict penal consequences on a wrong-doer not corporeally subject to the jurisdiction of the courts of the State. The action to be brought, it is true, is a civil one. But, in so far as the statute proposes to prevent infractions of law by the interposition of fine and imprisonment, the remedy sought is purely penal. Before we can decide that the Legislature intended such an anomalous procedure, we must find in the language used a clear and unquestionable expression of that distinct purpose. If any other construction is at all admissible, such construction must be adopted.

It cannot be disputed that the expressions, '' the party violating,'' in the first part of the section, and '' the party so offending,'' near the close, mean one and the same person or party. If, therefore, any person or party cannot possibly be meant in one of these connections, it will be absurd to consider such person or party as referred to in the other. Now, it is clear that the foreign corporation was not in the legislative contemplation when the liability to imprisonment was declared. It is therefore unreasonable to suppose that the money penalty was intended, in any case, to

apply to the foreign corporation. A contrary conclusion would make possible two inconsistencies.

It would admit a supposition of one person or party liable to a payment of $500, while a different person or party would be subject to imprisonment for its non-payment. For the same infraction of law, also, one class of offenders would be subject to a money judgment only, while another might incur personal incarceration besides.

Plaintiff's counsel, evidently perceiving these difficulties, argues that if a statute express first a general intent, and afterwards a particular inconsistent intent, the latter will be taken as an exception to the former, and both will stand, citing *Stockett* v. *Bird*, 18 Md. 484. The rule of interpretation cannot be applied here, and the case cited has no sort of analogy with the present. A Maryland statute provided that when a married woman died intestate, leaving no children, her personal property should vest absolutely in her husband. The same statute provided, in another section, that the *choses in action* not reduced into possession by the husband of a *feme covert* dying intestate should go to her personal representatives. Here was a conflict, appearing on the face of the statute, between two of its provisions: the first, by the generality of its terms, comprehending the subject-matter of the second, which was disposed of, nevertheless, in a way inconsistent with the general provision. In other words, the conflict was between a general and a special provision of the same law. To say that in such cases the special provision will be treated as creating an exception, is only to express in different form the settled doctrine that a law special in its operation will always prevail over a general law embracing the same subject. But in the case before us there is no field for the operation of that doctrine. The incongruity is not between a general and a special provision of the statute; nor is it between the expressions, "the party violating," in one part of the law, and "the party so offending," in another part.

These expressions are entirely harmonious, as are the provisions which declare, the one a subjection to the payment of the penalty, and the other a liability to imprisonment if the penal sum be not paid. The inconsistency, if so it may be called, lies between any interpretation making a foreign corporation the subject of both provisions and the physical impossibility of imprisoning such foreign corporation. This brings into play another rule of interpretation : " every interpretation that leads to an absurdity ought to be rejected." By this is meant that no such construction should be put upon a statute as would lead to an absurd consequence. Smith's Comm., sect. 486 ; Vattel, bk. 2, chap. 17, sects. 276, 277. Thus, if we interpret the words, " the party so offending," to mean the foreign corporation, this will lead to the absurdity of a law to seize and detain an intangible creation not to be found within the limits of the State. Such an interpretation must therefore be rejected ; and this rejection must extend to " the party violating," also, where it occurs in the beginning of the section, since the whole context necessitates an identification of the two " parties " as being one and the same. When thus rejecting an absurd interpretation, we construe both expressions to mean the resident agent only. We simply obey another rule of construction, which requires that effect be given to every part of a law, and that the different parts be so construed, if possible, as to harmonize them with each other. The method contended for by the plaintiff demands, in effect, after the words " the party so offending," an interpolation of the additional words, " excepting foreign corporations." So to interpolate, by implication or otherwise, would be to enact an amendment, and not to interpret the law as it stands.

There is corroborative authority in other provisions of the act, for the interpretation, which we favor. The *status* of the defendant must here be considered as it is described in the petition, viz. : that of a corporation which has held a

certificate regularly granted under the thirty-sixth section, which certificate has been revoked under the forty-first section. Plaintiff argues that defendant must be viewed in the light of a foreign corporation which has never been authorized to do business in this State, and hence we must inquire what violations of the act may be committed by such a corporation. But this is founding an argument upon premises which may be more or less analogous, rather than upon the true premises before us. The statute makes special provision for the consequences of a revocation of the certificate. Surely it will be more rational to find in these consequences the predicament of parties interested, than to hunt it out among the provisions made for a different class of foreign corporations. The words of the statute are : " Whenever it shall appear to the said superintendent * * * that the affairs of any company not incorporated by the laws of this State * * * are in an unsound condition, he shall revoke the certificate of authority granted to such company ; * * * and the agent or agents of such company are, after such revocation and notice, required to discontinue the issuing of any new policies or the collection of any premiums," etc. What follows is a series of provisions applicable to the obtaining of an injunction against a company which shall appear to be insolvent. Thus it appears that the only express prohibition against the issuing of policies, in the case of a revoked certificate, is directed to the agent or agents, and not to the corporation. Plaintiff's counsel says that this cannot be a correct understanding, because it is well known that agents never do issue policies. But we have no judicial knowledge of that fact, if it be one. Certain it is that the foreign companies, unless forbidden by the local law, may authorize their agents to issue policies, if they choose so to do. The Legislature may well have thought it wise to provide for such a contingency. As the law might act with penal effect on the resident agent,

but could not do so upon the foreign corporation, the prohibition in the forty-first section, taken in connection with our interpretation of the fifty-second as applicable in this case exclusively to agents, forms the only system of regulations which we can reasonably suppose to have been intended by the law-making power. Our conclusion is that the fifty-second section was not framed to impose penalties on foreign corporations for issuing policies under the circumstances described in the petition, and hence the demurrer was properly sustained.

The judgment is affirmed. All the judges concur.